## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | | Cr. No. |
| **UNITED STATES OF AMERICA** | : | |
| | : | **Violations:** |
| | : | **18 U.S.C. § 1956(h) (Conspiracy To** |
| v. | : | **Commit Money Laundering)** |
| | : | **18 U.S.C. § 1341 (Mail Fraud)** |
| | : | **18 U.S.C. § 2 (Causing An Act To Be Done** |
| **SAMUEL EARL POPE,** | : | **And Aiding And Abetting)** |
| | : | **18 U.S.C. § 982 (Criminal Forfeiture)** |
| Defendant. | : | **18 U.S.C. § 981(a)(1)(C) (As Incorporated** |
| | : | **By 28 U.S.C. § 2461(c)) (Criminal** |
| | | **Forfeiture)** |

## INFORMATION

The United States Attorney informs the Court that:

### INTRODUCTION

At times material to this Information:

1.  Defendant SAMUEL EARL POPE (hereinafter "POPE") lived on Barnaby Terrace, in Southeast Washington, D.C. POPE purchased his home in 1989 and never owed nor paid more than $1,000 per year in District of Columbia property taxes on his Barnaby Terrace home.

2.  HARRIETTE MONICA WALTERS (hereinafter "WALTERS") lived in the District of Columbia. In or about 1981, WALTERS began working for the District of Columbia government in the Department of Finance and Revenue, which later became the Office of Tax and Revenue (hereinafter "OTR"). In or about 2001, WALTERS became Manager of the Real Property Tax Administration Adjustments Unit (hereinafter "RPTAAU") in OTR. OTR is part of the District of Columbia Office of the Chief Financial Officer.

3.    OTR administered and enforced the District of Columbia's tax laws, collected revenues for the City, distributed property tax refunds, and recorded deeds and other written instruments affecting rights, titles, or interests in real or personal property. OTR had two primary programs for processing property tax refunds: the System of Account and Reporting (hereinafter "SOAR") and the Integrated Tax System (hereinafter "ITS"). To track individual property tax refunds issued through SOAR, OTR assigned each individual refund a specific number. That number, in the nomenclature of OTR, was called the VRRE number. The District of Columbia and its various agencies annually received benefits in excess of $10,000 under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, or other forms of federal assistance.

4.    In or about 1992, RICARDO WALTERS, a nephew of WALTERS, came to the continental United States and lived with WALTERS and WALTERS's sister in an apartment building near Waterside Mall, in Southwest Washington, D.C.

5.    In or about the late 1980s, POPE opened a beauty salon in the Waterside Mall called Head To Toe Salon. In or about 1993, POPE moved the salon to 4th Street, SW, where it remained until it closed in or about 2003. In or about 1990, POPE obtained a chauffeur's license and began to operate a car service.

6.    In or about the late 1980s, WALTERS started having her hair done at Head To Toe Salon. Over time, POPE and WALTERS became good friends, and WALTERS came to trust POPE.

7.    In or about 1992, WALTERS started sending her nephew, RICARDO WALTERS, to Head To Toe Salon for haircuts. Over time, POPE became a role model and mentor to RICARDO WALTERS.

8.    POPE opened a number of banking accounts for his businesses. One of his accounts was under the name Southwest Business Center. Another of his business banking accounts had the name Earl Pope & Associates. Some of Pope's business accounts were at SunTrust Bank or one of its predecessor banks; others were at Bank of America (hereinafter "BOA") or one of its predecessor companies. SunTrust, BOA, and their respective predecessor companies were financial institutions insured by the Federal Deposit Insurance Corporation.

9.    WALTERS and her sister used POPE's car service to drive WALTERS's sister to and from work. WALTERS also used POPE's car service for trips to the airport, trips to Atlantic City, and other purposes described in further detail below.

10.    Individual One was a business partner of POPE in his Head To Toe Salon.

11.    Individual Two was POPE's close friend and former business partner. Individual Two lived on Otis Place in Northwest Washington, D.C., for most of Individual Two's life, having been raised by family in that home and later inheriting it. Individual Two never owed nor paid more than $4,000 per year in District of Columbia property taxes on the Otis Place home.

12.    Individual Three was a friend and business partner of POPE who lived in Mississippi. POPE and Individual Three formed a company, Corporation One.

13.    Beginning in or about 1994, WALTER JONES (hereinafter "JONES") was employed by NationsBank and then BOA (which acquired NationsBank) as a banking center service manager and assistant manager. JONES assisted WALTERS in defrauding the District of Columbia by laundering the proceeds of her fraud scheme and, in particular, allowing WALTERS and her co-conspirators to deposit District of Columbia property tax refund checks into corporate accounts even when the accounts did not match the payee names on the refund checks.

-3-

14.    JAYRECE TURNBULL (hereinafter "TURNBULL"), a niece of WALTERS, was a co-conspirator in WALTERS's scheme to defraud the District of Columbia. TURNBULL used accounts for her home cleaning service, Legna Home Services, to launder proceeds of her scheme with WALTERS and others. TURNBULL also created sham corporations, including Chapa Interiors and First American Home, to launder proceeds of the scheme.

## THE SCHEME

### 1991

15.    In or about the months leading up to May 1991, POPE and WALTERS began having frank conversations about financial matters, and POPE shared with WALTERS his concerns about being able to pay rent increases on his salon and other business expenses.

16.    Having grown to trust POPE, WALTERS told POPE about a method she had for embezzling funds from the District of Columbia government. WALTERS's scheme involved preparing false and fraudulent property tax refund applications to be processed by OTR. WALTERS used her position as an OTR employee (and, later, manager) to ensure that the fraudulent property tax refund applications would be processed and approved, and that property tax refund checks would be generated. WALTERS's co-conspirators agreed to have fraudulently obtained property tax refund checks issued in their names. WALTERS would ensure that the fraudulently obtained checks would get to her co-conspirators expeditiously by having them held for pickup instead of being mailed. WALTERS would pick up the checks and then deliver them to her co-conspirators. The co-conspirators would cash the fraudulently obtained checks or deposit them into their accounts and would split the proceeds with WALTERS. WALTERS had been defrauding the District of Columbia in this manner for at least two years before bringing POPE into her scheme.

-4-

17.    As WALTERS began increasing the amounts of the fraudulent property tax refunds, WALTERS saw an advantage to adding co-conspirators with business accounts. WALTERS believed that fewer suspicions would be raised when large checks were deposited into business accounts than into individuals' personal accounts.

18.    WALTERS explained to POPE that she could get District of Columbia property tax refund checks through her work at OTR even when no refund was due. POPE expressed interest in the subject. WALTERS explained that she would create the paperwork necessary to generate a property tax refund in his company's name; that the District of Columbia would issue a property tax refund check in his company's name; and that he would then deposit the checks into his business accounts and later split the proceeds with her.

19.    POPE knowingly and willingly agreed to participate in WALTERS's scheme.

20.    Accordingly, in or about May 1991, POPE began receiving fraudulently obtained District of Columbia property tax refunds. As part of the scheme, POPE would receive the fraudulently obtained checks by hand from WALTERS; POPE typically would deposit the checks into his accounts at the Waterside Mall branch of the National Bank of Washington (a predecessor of SunTrust); at WALTERS's direction, POPE would let the money stay in his account for a period of time to avoid suspicions; POPE would thereafter withdraw cash from his accounts to provide WALTERS her share of the fraud proceeds; and the withdrawals were typically in amounts less than $10,000, again to avoid raising suspicions.

21.    As the scheme continued, and to avoid raising any suspicions that the same payee was receiving multiple property tax refunds in the same year or across a number of years, WALTERS varied the payee name on the District of Columbia property tax refund checks given to POPE. WALTERS used POPES's actual businesses; WALTERS also used sham business names that sufficiently matched account names held by POPE for POPE to be able to deposit the checks into his accounts.

22.    By bringing POPE into the scheme, and being able to use his corporate account, WALTERS was able to increase the size of the fraudulent property tax checks she could create. Thus, for the first sixteen fraudulent property tax refunds created by WALTERS, which involved the period from in or about June 1989 to in or about May 1991, WALTERS used individuals' names on the payee line of the checks. Those checks ranged in value from $2,297.87 to $9,678.68. The first fraudulent property tax refund check for POPE—in the amount of $37,639.00 to his company—was nearly four times larger than the largest check WALTERS had created before bringing POPE into the scheme.

23.    In or about 1991, POPE received two fraudulently obtained District of Columbia property tax refunds through his scheme with WALTERS:

| Date | Voucher | Check No. | Payee | Amount |
|---|---|---|---|---|
| May 3, 1991 | VRRE 3281 | 483154 | Earl Pope & Associates Inc. | $37,639.00 |
| September 16, 1991 | VRRE 3561 | 586512 | Earl Pope and Associates | $23,333.52 |

24.    In sum, in or about 1991, POPE received $60,972.52 in fraudulently obtained District of Columbia property tax refund checks. He split that amount with his co-conspirator, WALTERS. Neither Earl Pope and Associates nor Earl Pope & Associates Inc. was in any way entitled to a property tax refund.

### 1993

25.    In or about 1993, POPE received two fraudulently obtained District of Columbia property tax refunds through his scheme with WALTERS:

| Date | Voucher No. | Check No. | Payee | Amount |
|------|-------------|-----------|-------|--------|
| July 20, 1993 | VRRE 8010 | 231044 | Walker-Pope & Assocs | $28,656.01 |
| October 1, 1993 | VRRE 7699 | 295081 | Pope and Associates | $43,432.63 |

26.    In sum, in or about 1993, POPE received $72,088.64 in fraudulently obtained District of Columbia property tax refund checks. He split that amount with his co-conspirator, WALTERS. Neither Walker-Pope & Assocs nor Pope and Associates was in any way entitled to a District of Columbia property tax refund.

### 1994

27.    In or about 1994, POPE received eight fraudulently obtained District of Columbia property tax refunds through his scheme with WALTERS:

| Date | Voucher No. | Check No. | Payee | Amount |
|------|-------------|-----------|-------|--------|
| January 31, 1994 | VRRE 7821 | 323620 | Walker-Pope Inc | $52,963.00 |
| March 2, 1994 | VRRE 8905 | 349977 | Pope and Assocs Inc | $46,880.00 |
| April 28, 1994 | VRRE 0015 | 420795 | Pope and Associates, Inc | $58,020.90 |

| May 3, 1994 | VRRE 0721 | 399175 | Walker-Pope Associates | $48,900.00 |
| July 8, 1994 | VRRE 0022 | 459922 | Pope-Walker and Assocs | $48,321.79 |
| September 1, 1994 | VRRE 0011 | 474937 | Walker-Pope & Asscos [sic] Inc | $55,820.69 |
| November 2, 1994 | VRRE 0019 | 404690 | Walker-Pope & Assocs | $58,670.98 |
| November 29, 1994 | VRRE 0023 | 527540 | Pope and Associates, Inc. | $52,642.33 |

28.     In sum, in or about 1994, POPE received $422,219.69 in fraudulently obtained District of Columbia property tax refund checks.  He split that amount with his co-conspirator, WALTERS.  None of the businesses listed in paragraph 27—whether a real business or a sham business name—was in any way entitled to a District of Columbia property tax refund.

<u>1995</u>

29.     In or about 1995, POPE received five fraudulently obtained District of Columbia property tax refunds through his scheme with WALTERS:

| Date | Voucher No. | Check No. | Payee | Amount |
|------|-------------|-----------|-------|--------|
| January 24, 1995 | VRRE 2028 | 558029 | Walker-Pope & Assoc Inc | $46,874.98 |
| March 31, 1995 | VRRE 2030 | 575892 | Pope and Associates, Inc. | $63,729.89 |
| May 15, 1995 | VRRE 3811 | 609741 | Pope and Associates | $57,929.09 |
| June 15, 1995 | VRRE 3003 | 622982 | Walker-Pope & Associates Inc | $63,375.67 |
| August 28, 1995 | VRRE 3011 | 647987 | Pope Management Inc | $74,293.02 |

30.    In sum, in or about 1995, POPE received $306,202.65 in fraudulently obtained District of Columbia property tax refund checks.  He split that amount with his co-conspirator, WALTERS.  None of the businesses listed in paragraph 29—whether a real business or a sham business name—was in any way entitled to a District of Columbia property tax refund.

1996

31.    In or about 1996, POPE received one fraudulently obtained District of Columbia property tax refund through his scheme with WALTERS:

| Date | Voucher No. | Check No. | Payee | Amount |
|---|---|---|---|---|
| February 2, 1996 | VRRE 1125 | 064393 | Pope-Walker Inc | $61,499.36 |

32.    In sum, in or about 1996, POPE received $61,499.36 in a fraudulently obtained District of Columbia property tax refund check.  He split that amount with his co-conspirator, WALTERS.  Pope-Walker Inc was not entitled to a District of Columbia property tax refund.

1999

33.    In or about 1999, POPE received one fraudulently obtained District of Columbia property tax refund through his scheme with WALTERS:

| Date | Voucher No. | Check No. | Payee | Amount |
|---|---|---|---|---|
| March 25, 1999 | VRRE 7747 | 575257 | Walker-Pope | $92,779.88 |

34.    In sum, in or about 1999, POPE received $92,779.88 in a fraudulently obtained District of Columbia property tax refund check.  He split that amount with his co-conspirator, WALTERS.  Walker-Pope was not entitled to a property tax refund.

POPE Continues To Receive Proceeds from WALTERS's Scheme

35.    POPE continued to receive proceeds of WALTERS's criminal scheme—from WALTERS directly and from the accounts of one of her other co-conspirators, TURNBULL—even when not directly depositing District of Columbia property tax refund checks made payable to his businesses.    POPE knew that WALTERS was a District of Columbia employee on a fixed government salary.    POPE knew that the funds he was continuing to receive from WALTERS were proceeds of some form of unlawful activity.    The funds POPE continued to receive in fact were the proceeds of specified unlawful activity, as that term is defined in Title 18, United States Code, Section 1956(c)(7).

36.    The funds described in paragraph 35 were provided to POPE in cash, in personal checks, cashier's checks, and through interbank transfers.

2001

37.    In or about 2001, in addition to cash, POPE received at least one check from WALTERS, for $10,000:

| Date | Amount | Account | Check No. | Payee |
|------|--------|---------|-----------|-------|
| July 21, 2001 | $10,000 | BOA 5677 | 2076 | Earl Pope |

2002

38.    In or about 2002, in addition to cash, POPE received at least four checks from WALTERS, totaling $116,701.66:

| Date | Amount | Account | Check No. | Payee |
|------|--------|---------|-----------|-------|
| January 4, 2002 | $5,000 | Cashier's Check | 1557418 | WALTERS |
| February 20, 2002 | $23,532.69 | Cashier's Check | 211447 | WALTERS |
| April 30, 2002 | $18,351.64 | Cashier's Check | 222109 | WALTERS |
| August 23, 2002 | $69,817.33 | Cashier's Check | 252626 | Earl Pope |

2003

39.    In or about 2003, in addition to cash, POPE received at least nine checks from WALTERS, totaling $82,500:

| Date | Amount | Account | Check No. | Payee |
|------|--------|---------|-----------|-------|
| January 13, 2003 | $1,000 | BOA 5677 | 2652 | S. Earl Pope |
| February 22, 2003 | $3,000 | BOA 5677 | 2688 | Earl Pope |
| April 2, 2003 | $5,000 | BOA 5677 | 2741 | S. Earl Pope |
| May 7, 2003 | $10,000 | Cashier's Check | 0020539 | Earl Pope |
| June 3, 2003 | $10,000 | Cashier's Check | 0020546 | Earl Pope |
| June 16, 2003 | $3,500 | BOA 5677 | 2825 | Earl Pope |
| July 18, 2003 | $5,000 | BOA 5677 | 2867 | Earl Pope |
| August 26, 2003 | $5,000 | BOA 5677 | 2911 | Earl Pope |
| October 6, 2003 | $40,000 | BOA 3993 | 1191 | WALTERS |

40.    The $40,000 check POPE deposited into his Southwest Business Center account on or about October 6, 2003, actually lists WALTERS, not POPE, as the payee; WALTERS signed the check over to POPE so that he could deposit it into his account. The check lists as the payor "Jayrece E. Turnbull DBA Legna Home Services," which was BOA Account No. 3993.

2004

41.    In or about 2004, in addition to cash, POPE received at least one check from WALTERS, for $4,000:

| Date | Amount | Account | Check No. | Payee |
|------|--------|---------|-----------|-------|
| December 30, 2004 | $4,000 | Cashier's Check | 1819873 | Samuel Pope |

42.    In or about 2004, POPE also received at least two cash transfers—one from WALTERS and one from TURNBULL's account—totaling $50,000, into BOA Account No. 4667, his Southwest Business Center Account:

| Date | Amount | Transferor | Account |
|------|--------|------------|---------|
| July 2, 2004 | $25,000 | WALTERS | BOA 5677 |
| July 7, 2004 | $25,000 | Jayrece E. Turnbull DBA Legna Home Services | BOA 3993 |

43.    In sum, in or about 2004, and in addition to any cash he received from them, POPE received $54,000 from WALTERS and from TURNBULL's account in checks and account transfers.

2005

44.    In or about 2005, in addition to cash, POPE received at least eight checks from WALTERS, totaling $40,000:

| Date | Amount | Account | Check No. | Payee |
|------|--------|---------|-----------|-------|
| January 24, 2005 | $3,000 | Cashier's Check | 1820182 | Earl Pope |
| February 7, 2005 | $3,000 | Cashier's Check | 1820183 | Earl Pope |
| May 23, 2005 | $5,000 | BOA 5677 | 3534 | Earl Pope |
| July 22, 2005 | $9,000 | BOA 5677 | 3680 | Earl Pope |
| August 26, 2005 | $5,000 | Cashier's Check | 2060859 | Samuel Pope |
| September 9, 2005 | $5,000 | Cashier's Check | 2060858 | Samuel Pope |

| September 14, 2005 | $5,000 | Cashier's Check | 2060857 | Samuel Pope |
| September 14, 2005 | $5,000 | Cashier's Check | 2060861 | Samuel Pope |

45.     Significantly, in August and September of 2005, POPE deposited over a roughly three-week period four cashier's checks that were purchased for him by WALTERS on the exact same day (on or about August 19, 2005)—a point reflected in their sequential numbering (2060857, 2060858, 2060859, 2060861).

46.     In or about 2005, POPE also received at least two cash transfers from TURNBULL's accounts into BOA Account No. 4667, his Southwest Business Center Account, totaling $18,000:

| Date | Amount | Transferor | Account |
| --- | --- | --- | --- |
| February 23, 2005 | $9,000 | Jayrece E. Turnbull DBA Legna Home Services | BOA 3993 |
| December 23, 2005 | $9,000 | Jayrece E. Turnbull DBA Chapa Interiors | BOA 2467 |

47.     In or about 2005, POPE also received at least one cash transfer from TURNBULL's account into BOA Account No. 5864, his personal account, on the same day he also received a $9,000 transfer from TURNBULL's account into his Southwest Business Center Account:

| Date | Amount | Transferor | Account |
| --- | --- | --- | --- |
| February 23, 2005 | $1,000 | Jayrece E. Turnbull DBA Legna Home Services | BOA 3993 |

48.     In sum, in or about 2005, in addition to any cash he received from them, POPE received $59,000 from WALTERS and from TURNBULL's account in checks and account transfers.

2006

49.    In or about 2006, in addition to cash, POPE received at least two checks from

WALTERS, totaling $25,000:

| Date | Amount | Account | Check No. | Payee |
|------|--------|---------|-----------|-------|
| July 3, 2006 | $5,000 | Cashier's Check | 0187420 | Earl Pope |
| July 25, 2006 | $20,000 | Cashier's Check | 1375992 | Earl Pope |

50.    The $20,000 cashier's check was given to POPE from WALTERS in return for

delivering a thick envelope from WALTERS to JONES, an assistant branch manager at the Iverson

Mall branch of BOA, in Baltimore, Maryland.  In addition, WALTERS paid POPE approximately

$400 for traveling from the District of Columbia to Baltimore on that occasion.  While POPE was

waiting in the bank, he heard JONES call WALTERS and confirm that POPE was to receive a

$20,000 cashier's check out of funds controlled by WALTERS.  POPE took the day off from his job

at a hotel in the District of Columbia to deliver the envelope from the District of Columbia to

Baltimore for WALTERS.

51.    In or about 2006, POPE also received at least one cash transfer from TURNBULL's

account  into BOA Account No. 4667, his Southwest Business Center Account:

| Date | Amount | Transferor | Account |
|------|--------|------------|---------|
| February 9, 2006 | $15,000 | Jayrece E. Turnbull DBA Chapa Interiors | BOA 2467 |

52.    In or about 2006, POPE also received at least one cash transfer from TURNBULL's

account  into BOA Account No. 5864, his personal account:

| Date | Amount | Transferor | Account |
|------|--------|------------|---------|
| September 1, 2006 | $25,000 | Jayrece E. Turnbull DBA Chapa Interiors | BOA 2467 |

53.    In sum, in or about 2006, in addition to any cash he received from them, POPE received $65,000 from WALTERS and from TURNBULL's account in checks and account transfers.

2007

Additional Proceeds

54.    In or about 2007, in addition to cash, POPE received at least three checks from WALTERS, totaling $25,000:

| Date | Amount | Account | Check No. | Payee |
|------|--------|---------|-----------|-------|
| January 3, 2007 | $5,000 | BOA 5677 | 4825 | Individual One |
| January 3, 2007 | $5,000 | BOA 5677 | 4824 | S. Earl Pope |
| February 16, 2007 | $15,000 | Provident 3727 | 125 | Earl Pope |

55.    In sum, and in addition to any cash he received from them during the period, between in or about 2001 and in or about 2007, POPE received at least $412,201.66 in proceeds from WALTERS and from TURNBULL's account in the form of personal checks, cashier's checks, and intrabank account transfers.

Additional Fraudulent Property Tax Refunds

56.    In or about 2005 to 2006, Individual Two, POPE's close friend and former business partner, was experiencing financial difficulties. Individual Two fell behind in mortgage payments on Individual Two's Otis Place home, which led the lien-holding bank to initiate foreclosure proceedings. Individual Two convinced another individual to put his name on the mortgage. Individual Two thereafter wanted to get the other individual's name off the mortgage so Individual Two could refinance the loan, and he came to POPE for assistance. POPE, who had better credit than Individual Two, agreed to put his name on the mortgage so the mortgage could be refinanced.

POPE did not contribute any funds to Individual Two for that transaction; POPE merely agreed to allow Individual Two to use POPE's name and credit rating.

57.    In or about 2007, POPE received in the mail at his Barnaby Terrace address a District of Columbia property tax bill for Individual Two's Otis Place address.  POPE spoke with WALTERS about the bill.

58.    On or about March 6, 2007, WALTERS, using her authority as the manager of RPTAAU in OTR, created false entries in OTR's computer system, ITS, to create a false tax credit for the Otis Place address.  Specifically, WALTERS altered the computer entries in ITS to make it appear that a credit of $83,199.62 was due on the Otis Place address as of October 1, 2003—a period of time when a predecessor computer system to ITS was in place.  There was no such credit due on the Otis Place address.  Given the changes made by WALTERS, however, the ITS system therefore treated the October 1, 2003, credit as being available on the Otis Place address in 2007.

59.    On or about March 7, 2007, the day after WALTERS created the fraudulent ITS credit for the Otis Place address, POPE faxed a letter to OTR requesting a property tax refund for the Otis Place address and requesting that the refund be mailed to his Barnaby Terrace address.

60.    POPE's March 7, 2007, letter referenced the square and lot number for the Otis Place property and stated: "I spoke with Ms. Harriet [sic] Walters, Manager, concerning the property referenced above [the Otis Place property], specifically the 2007 assessment.  This is a request to have any overage mailed to me, at my address listed below, after payment has been satisfied."  The address listed below in the letter was POPE's Barnaby Terrace address.

61.    On or about March 14, 2007, WALTERS approved a fraudulent property tax voucher for the Otis Place property—VRRE 3663—in the amount of $83,199.62. The payee on the voucher was listed as "Samuel Earl Pope," and the voucher listed the mailing address as POPE's Barnaby Terrace address. However, WALTERS listed a special code on the voucher to ensure that the resulting refund check would be held for pick up, rather than mailed. WALTERS attached to VRRE 3663 POPE's March 7, 2007, letter as supporting documentation for the refund request.

62.    As a result of POPE's letter and WALTERS's creation of the false credit for the Otis Place address, on or about March 16, 2007, the District of Columbia issued Check No. 6714098 on Bank of America Account No. 2547, a check in the amount of $83,199.62 made out to POPE and that included his home address on Barnaby Terrace.

63.    At some point between in or about March 16, 2007, and in or about March 21, 2007, POPE picked up Check No. 6714098 from WALTERS at OTR.

64.    On or about March 21, 2007, POPE deposited the $83,199.62 District of Columbia property tax refund check into BOA Account No. 5864, his personal account. The back of the negotiated check bears POPE's signature.

65.    POPE knew that Individual Two was experiencing financial difficulties. POPE also knew that Individual Two's Otis Place address was Individual Two's family home and that, given Individual Two's financial straits, Individual Two had not overpaid District of Columbia property taxes by $83,199.62 on the Otis Place address. POPE had not provided any money to Individual Two to contribute toward the Otis Place mortgage or closing costs, and was not owed $83,199.62 from Individual Two. Instead, POPE had merely agreed to allow Individual Two to use POPE's name and good credit on the mortgage.

66.    POPE did not inform Individual Two about POPE's receipt of an $83,199.62 property tax refund on Individual Two's family home.

67.    Having received $83,199.62 with respect to his friend's Otis Place address, POPE asked WALTERS about getting a property tax refund on his Barnaby Terrace address, even though—as the person who owned that property and had been paying property taxes for more than 15 years, and as someone who previously had cashed fraudulent District of Columbia property tax refund checks for WALTERS—POPE knew that he was not entitled to any property tax refund for that property.

68.    On or about March 16, 2007, the same day the District of Columbia issued a check for the fraudulent property tax refund for the Otis Place property, WALTERS, again using her authority as the manager of RPTAAU, created a false tax credit for POPE's Barnaby Terrace address. Specifically, she altered the computer entries in ITS fraudulently to create a credit of $75,000.00 due from the District of Columbia to POPE on his Barnaby Terrace address as of October 1, 2002—a period of time when a predecessor computer system to ITS was in place. There was no such credit due on POPE's Barnaby Terrace address. Given the changes made by WALTERS, however, the ITS system reflected the October 1, 2002, credit as being available to POPE on the Barnaby Terrace address as of 2007. As discussed below, WALTERS never drew upon this $75,000 credit.

69.    On or about March 28, 2007, despite having created a fraudulent credit in ITS directly for POPE's Barnaby Terrace address, WALTERS used her authority as the manager of RPTAAU to create a false tax credit for another address on Barnaby Terrace (hereinafter "the Other Barnaby Terrace address"), a home fewer than 400 yards down the street from POPE's Barnaby Terrace address. Specifically, WALTERS altered the computer entries in ITS to make it appear that a credit

of $75,242.31 was due from the District of Columbia to the owner of the Other Barnaby Terrace address as of October 1, 2002—a period of time when a predecessor computer system to ITS was in place. There was no such credit due on the Other Barnaby Terrace address. Given the changes made by WALTERS, however, the ITS system therefore treated the October 1, 2002, credit as being available on the Other Barnaby Terrace address in 2007.

70.    On or about April 5, 2007, WALTERS caused the creation of a property tax refund voucher in ITS—Voucher No. 07R1398—in the amount of $75,242.31 for the Other Barnaby Terrace address.

71.    As a result of WALTERS's creation of the false credit for the Other Barnaby Terrace address and Voucher No. 07R1398, on or about April 6, 2007, the District of Columbia issued Check No. 1714924 on Bank of America Account No. 2547, a check in the amount of $75,242.31 made out to the last name and known address of the taxpayer associated with the Other Barnaby Terrace address. Thus, on or about April 6, 2007, Check No. 1714924 was mailed by the United States Postal Service to an address in Silver Spring, Maryland—the address on file in ITS for the owner of the Other Barnaby Terrace address. Given that POPE had asked that the first fraudulent 2007 property tax refund be mailed to him, and that he had asked WALTERS for a second fraudulent refund in 2007, the mailing to the owner of the Other Barnaby Terrace address was reasonably foreseeable to POPE.

72.    Rather than cashing the check, on or about April 17, 2007, the owner of the Other Barnaby Terrace address came to OTR with a copy of Check No. 1714924 and stated that the owner was not owed a property tax refund of $75,242.31 from the District of Columbia.

73.    On or about April 23, 2007, one of the employees WALTERS supervised completed a District of Columbia government form titled, "Application for Stop Check Payment (Statement of Claimant)." Under the section titled "State the Circumstances of the Loss or Destruction of the Check if Received," the form has the handwritten notes "Reissue check" and "Stop check sent to wrong address." The form reflects the name of the property owner for the Other Barnaby Terrace address.

74.    As a result of that action, Check No. 1714924 to the owner of the Other Barnaby Terrace address was cancelled, and the $75,242.31 credit for that address was reinstated and available in ITS for a refund.

75.    On or about May 1, 2007, WALTERS approved a second fraudulent property tax voucher for POPE in 2007—VRRE 3734. This fraudulent refund was in the amount of $75,242.31. The payee on the voucher was listed as "Samuel Pope." Rather than listing a mailing address, the voucher states "Hold-For Pick-Up."

76.    Significantly, although VRRE 3734 listed POPE as the taxpayer, the voucher drew on the $75,242.31 credit listed in ITS for the Other Barnaby Terrace address, not the $75,000 fraudulent credit WALTERS had created for POPE's Barnaby Terrace address on March 16, 2007.

77.    As a result of WALTERS's creation of the false credit for the Other Barnaby Terrace address, and her creation of VRRE 3734, on or about May 2, 2007, the District of Columbia issued Check No. 6744522 on Bank of America Account No. 2547, a check in the amount of $75,242.31 made out to "Samuel Pope."

78.    At some point between May 2, 2007, and July 2, 2007, POPE picked up Check No. 6744522 from WALTERS at OTR.

79.     On or about July 2, 2007, POPE deposited the $75,242.31 District of Columbia property tax refund check into BOA Account No. 4667, his Southwest Business Center account. The back of the negotiated check bears POPE's signature.

80.     In sum, POPE received $1,174,204.60 in fraudulently obtained District of Columbia property tax refunds through his scheme with WALTERS.  Moreover, in addition to any cash he received from WALTERS and TURNBULL, POPE received $412,201.66 in additional proceeds from WALTERS's scheme.  Thus, between in or about 1991 and November 2007, POPE received a total of $1,586,406.26 in proceeds from his scheme with WALTERS.

### Significant Representative Transactions with the Stolen Funds

81.     POPE and his friend, Individual Three, formed a partnership, Corporation One.  The partners purchased a restaurant in Mississippi.  POPE conducted transactions with proceeds of his scheme with WALTERS, including writing $91,000 in checks to Corporation One or his business partner:

| Date | Amount | Payor Account | Check No. | Payee |
|------|--------|---------------|-----------|-------|
| June 3, 2007 | $10,000 | BOA 5864 | 512 | Individual Three |
| June 3, 2007 | $10,000 | BOA 4667 | 2410 | Individual Three |
| July 6, 2007 | $15,000 | BOA 4667 | 2443 | Corporation One |
| July 30, 2007 | $10,000 | BOA 4667 | 2469 | Individual Three |
| August 12, 2007 | $10,000 | BOA 4667 | 2487 | Corporation One |
| August 23, 2007 | $10,000 | BOA 4667 | 2503 | Corporation One |
| September 25, 2007 | $5,000 | BOA 5864 | 520 | Corporation One |
| September 20, 2007 | $10,000 | BOA 4864 | 522 | Corporation One |
| September 22, 2007 | $6,000 | BOA 5864 | 523 | Corporation One |
| October 25, 2007 | $5,000 | BOA 4667 | 2550 | Corporation One |

82.     Thus, on or about the same day—June 3, 2007—POPE wrote two $10,000 checks to Individual Three, one from his personal account and one from his business account.

83.     POPE also used proceeds of his scheme with WALTERS in transactions involving payments toward his Barnaby Terrace home and vehicles.

COUNT ONE

Conspiracy to Commit Money Laundering

84.     Paragraphs 1 through 83 are re-alleged as though fully set forth herein.

85.     Beginning in or about May 1991, and continuing thereafter through November 2007, in the District of Columbia and elsewhere, POPE unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree with WALTERS to commit a violation of Title 18, United States Code, Section 1956—to wit, knowingly and willfully to conduct and attempt to conduct a financial transaction that involved the proceeds of specified unlawful activity, that is Mail Fraud, in violation of Title 18, United States Code, Section 1341, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, (a) with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and (b) knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

**(Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h))**

## COUNT TWO

### Mail Fraud

86.    Paragraphs 1 through 83 are re-alleged as though set forth fully herein.

87.    On or about April 6, 2007, in the District of Columbia, POPE, having devised a scheme or artifice with WALTERS to defraud the District of Columbia government, and to obtain money or property from the District of Columbia government by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting to do so, knowingly caused to be delivered by the Postal Service a property tax refund check to the owner of the other Barnaby Terrace home.

**(Mail Fraud, in violation of 18 U.S.C. § 1341; Causing an Act to be Done, and Aiding and Abetting, in violation of 18 U.S.C. § 2)**

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE

88.    Paragraphs 1 through 83 are re-alleged as though set forth fully herein and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(1)

89.    As a result of the offense alleged in Count One of this Information, POPE shall forfeit to the United States any and all property, real or personal, involved in, or traceable to such property involved in, the conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h), including but not limited to:

### Money Judgment

$1,586,406.26, which represents a sum of money equal to an amount of property involved in, or traceable to property involved in, the conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). Fed. R. Crim. P. 32.2(b)(1).

90.    By virtue of the commission of the felony offense charged in Count One of this

Information, any and all interest that POPE has in the property involved in, or traceable to property

involved in, the conspiracy to commit money laundering is vested in the United States and hereby

forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(1). If any of

the property described above as being subject to forfeiture pursuant to Title 18, United States Code,

Section 982(a)(1), as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1),

incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any

other property of said defendant up to the value of said property listed above as being subject to

forfeiture.

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TWO

91.    Paragraphs 1 through 83 are re-alleged as though set forth fully herein and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

92.    As a result of the offense alleged in Count Two of this Information, POPE shall forfeit to the United States any and all property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly, as the result of a mail fraud scheme, including, but not limited to:

### Money Judgment

$1,586,406.26 which represents the sum of money equal to the total amount of money constituting, or derived from, proceeds obtained, directly or indirectly, as a result of mail fraud scheme, in violation of Title 18 United States Code, Section 1341.

By virtue of the commission of the felony offense charged in Count Two of this Information, any and all interest that POPE has in the property constituting, or derived from, proceeds obtained directly or indirectly, as the result of a mail fraud scheme is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). If, as a result of any act or omission of the defendant, the property identified above:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), and incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of said property listed above as being subject to forfeiture.

**(Criminal Forfeiture, in violation of Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c))**.

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY FOR THE
DISTRICT OF COLUMBIA
D.C. Bar No.  498610

By:    _____
Timothy G. Lynch (D.C. Bar No. 456506)
David S. Johnson (D.C. Bar No. 477298)
Assistant United States Attorneys
Fraud & Public Corruption Section
555 Fourth Street, NW
Washington, D.C. 20530
(202) 353-4862
timothy.lynch2@usdoj.gov